```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
TRUSTEES OF THE NEW YORK CITY DISTRICT        :
COUNCIL OF CARPENTERS PENSION FUND,           :
WELFARE FUND, ANNUITY FUND, AND               :      17 Civ. 1106 (PAE)
APPRENTICESHIP, JOURNEYMAN RETRAINING,        :
EDUCATIONAL AND INDUSTRY FUND, TRUSTEES       :      OPINION & ORDER
OF THE NEW YORK CITY CARPENTERS RELIEF        :
AND CHARITY FUND, THE NEW YORK CITY AND       :
VICINITY CARPENTERS LABOR-MANAGEMENT          :
CORPORATION, and NEW YORK CITY DISTRICT       :
COUNCIL OF CARPENTERS,                        :
                                              :
                              Plaintiffs,     :
                                              :
              -v-                             :
                                              :
PULCO, INC.,                                  :
                                              :
                              Defendant.      :
                                              :
------------------------------------------------------------------ X
```

PAUL A. ENGELMAYER, District Judge:

On February 14, 2017, the Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund; the Trustees of the New York City Carpenters Relief and Charity Fund; the New York City and Vicinity Carpenters Labor-Management Corporation; and the New York City District Council of Carpenters (collectively, "petitioners") commenced this action to confirm an arbitral award ("the Award") issued against respondent Pulco, Inc., ("Pulco"). This action was filed under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3); Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185; and Section 9 of the Federal Arbitration Act ("FAA"), 9

1

U.S.C. § 9. Petitioners also seek interest plus attorneys' fees and costs incurred during this proceeding. This decision confirms the Award and grants such other relief.

I.   **Background**[1]

   A.   **The Parties' Agreement and the Arbitral Award**

Since at least May 28, 2013, Pulco has been a member of the Building Contractors Association of New York ("BCA"). Dkt. 1 ("Petition"), Ex. B at 1, 16. As a member of the BCA, Pulco must comply with a collective bargaining agreement (the "Agreement") executed by various labor organizations and the BCA. Petition Ex. A (the "Agreement"). Under the Agreement, Pulco was required to contribute to certain fringe benefit funds ("the Funds") for every hour its covered employees worked. *See* Agreement at 46–47. In June 2015, the labor organizations and the BCA extended the CBA's terms in a Memorandum of Agreement. Petition Ex. C.

To ensure compliance, the Agreement authorized the Funds to audit Pulco's books and records. Agreement at 46. If Pulco failed to comply with an audit request, a policy incorporated by reference in the Agreement authorized the Funds to estimate Pulco's delinquent contributions based on the company's past remittances. *See* Petition Ex. D ("Collection Policy") at 6–7; Agreement at 51. A dispute arose when Pulco refused to submit to an audit. Petition ¶ 17. Pursuant to a provision in the Funds' Collection Policy, the Funds estimated Pulco's delinquent remittances as $1,278,189.07. Petition ¶¶ 15, 17.

Article XVI, Section 7 of the Agreement contains an arbitration clause stating that "either party may seek arbitration" to resolve "any dispute or disagreement." Agreement at 54–55. The

---

[1] The Court draws the facts recited here from the Petition, Dkt.1, and accompanying exhibits, as well as the supplemental submission filed by petitioners in response to the Court's November 3, 2017, Order, Dkt. 12.

clause provides that the arbitrator "shall have full and complete authority to decide any and all issues," that the arbitrator's award "shall be final and binding," and that the award "shall be wholly enforceable in any court of competent jurisdiction." *Id.* at 55.

Under the Agreement, if court proceedings are later instituted to collect delinquent contributions to fringe benefit funds, the employer must pay the unpaid contributions plus "interest on the unpaid contributions determined at the prime rate of Citibank plus 2%," plus the greater of either "the amount of the interest charges on the unpaid contributions as determined above" or "liquidated damages of 20% of the amount of the unpaid contribution," as well as "reasonable attorney's fees and costs of the action." *Id.* at 53–54.

Pursuant to the Agreement, petitioners submitted the dispute to arbitration. Petition ¶ 18. On September 22, 2016, arbitrator Roger Maher held a hearing. *See* Petition Ex. F ("Award") at 1–2. Despite having received notice of the arbitration, Pulco did not appear or request an adjournment. *Id.* at 2. The arbitrator accordingly found Pulco in default, and heard evidence submitted by petitioners. *Id.*

On October 4, 2016, the arbitrator issued an Opinion and Default Award. *See* Award at 1. Based on the "substantial and credible evidence" petitioners had presented, the arbitrator found that Pulco was bound by the Agreement effective October 17, 2013, and had failed to permit petitioners' auditors to examine the corporate books and records for the period between October 17, 2013 and an unspecified "Date." *Id.* at 2. The arbitrator awarded a principal amount of $1,278,189.07—the auditors' estimated amount of delinquent contributions—plus interest at the rate of 5.5% to accrue from the date of the Award, liquidated damages, court costs, attorneys' fees, and arbitrator's fees, for a total of $1,646,491.75, excluding post-award interest. *Id.* at 3. To date, Pulco has not paid any portion of the Award. Petition ¶ 22.

3

### B. The Petition to Confirm the Award

On February 14, 2017, petitioners filed the instant Petition to confirm the Award. Dkt. 1. Petitioners seek a judgment confirming the Award; a sum of $1,646,491.75; interest on the $1,278,189.07 in delinquent contributions; liquidated damages; and attorneys' fees and costs incurred in this action. Petition ¶¶ (1)–(4).

On February 22, 2017, Pulco was served. Dkt. 7. On May 4, 2017, petitioners filed a letter asking the Court to treat the petition as a motion to confirm the Award and be deemed unopposed. Dkt. 8. On October 31, 2017, this Court granted the request to construe the petition as a motion to confirm the Award and directed Pulco to file a response. *See* Dkt. 9.

On November 3, 2017, this Court issued an order seeking supplemental submissions clarifying the record on a discrete point. Dkt. 11. The Court noted that "the record before the Court does not disclose the period during which respondent failed to make fringe-benefit payments." *Id.* at 1. The Court also noted that the Award unhelpfully described the delinquency period as "10/17/2013 through Date." *Id.* Accordingly, the Court directed petitioners to file a supplemental brief and supporting evidence, "which [was] to set out and substantiate the time period and damage calculations on which the arbitral award was based." *Id.* at 2. The order gave leave to Pulco to file a response by November 17, 2017. *Id.*

On November 10, 2017, petitioners submitted their supplemental letter brief. Dkt. 12. It was supported by the sworn declaration of Christopher Ozard, the Funds' audit department manager. *Id.*, Ex. A ("Ozard Decl."). Pulco did not file a response, and, indeed, has failed to appear or otherwise respond to any of petitioners' submissions or this Court's orders. The petition therefore remains unopposed.

## II. Discussion

### A. Applicable Legal Standards

The FAA provides a "streamlined" process for a party seeking a "judicial decree confirming an award." *Hall St. Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citations omitted). But "[a]rbitration awards are not self-enforcing." *Id.* at 104 (citation omitted). Rather, "they must be given force and effect by being converted to judicial orders by courts." *Id.*

Review of an arbitral award by a district court "is 'severely limited' so as not unduly to frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation." *Salzman v. KCD Fin., Inc.*, No. 11 Civ. 5865 (DLC), 2011 WL 6778499, at *2 (S.D.N.Y. Dec. 21, 2011) (quoting *Willemijn Houdstermaatschappij, BV v. Standards Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)). Indeed, "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is 'a barely colorable justification for the outcome reached.'" *Landy Michaels Realty Corp. v. Local 32B–32J, Serv. Emps. Int'l Union, AFL–CIO*, 954 F.2d 794, 797 (2d Cir. 1992) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)).

As in any proceeding, to prevail on a motion for summary judgment, the movant must "show [] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court

must view all facts "'in the light most favorable'" to the non-moving party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("[W]hen a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."). Similarly, on an unopposed motion for confirmation of an arbitral award, a court:

> may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*

6

*D.H. Blair*, 462 F.3d at 110 (citations omitted); *see also, e.g., Trustees of the N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Anthony Rivara Contracting, LLC*, No. 14 CIV. 1794 (PAE), 2014 WL 4369087, at *2–3 (S.D.N.Y. Sept. 3, 2014).

**B.      Confirmation of the Award**

The Court has reviewed in detail the Agreement, which includes an arbitration clause; the 2015 Memorandum of Agreement, which extended the Agreement's terms; the Funds' Collection Policy; the Award; and Petitioners' submission. On that record, and based on the very limited review that is appropriate, the Court concludes that there is no material issue of fact in dispute.

To be sure, although the arbitrator's opinion reflects a judgment reached as to the delinquency due based on his review of the "substantial and credible evidence" submitted by the petitioners, Award at 2, as drafted, it contains a facial ambiguity. The Award grants petitioners money owed during a specific "audit period," but does not define the end date of this period. Instead, in an apparent scrivener's error, it identifies the "audit period" as "10/17/2013 through Date." Award at 1, 2; *see* Petition Ex. E ("Notice of Hearing") (also defining the audit period as "10/17/2013 through Date").

The Agreement authorizes such a determination of funds due. The Funds were entitled to audit the books and records of a covered employer such as Pulco to determine whether the employer was complying with its obligations to remit a certain percentage of its employees' salaries to the Funds. *See* Agreement at 46 (obligation to make contributions); *id.* at 47 (audit rights). And where an employer refuses to provide access to its books and records, the Funds may estimate the amount of the employer's delinquency for the period for which the Funds

7

attempted to audit the employer. Collection Policy at 6–7; *see* Agreement at 51–52. The Collection Policy provides that the Funds may

> determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of *the requested audit period* are the highest number of average hours reported per week for any period of four consecutive weeks *during the audit period.*

Collection Policy at 6–7 (emphasis added).

Here, the Court ordered supplemental briefing to clarify the ambiguity in the Award as to the end date of the audit period in question. Based on that briefing, the Court is now satisfied that the Award is amply justified by the factual record. Petitioners' supplemental submission clarifies that the "audit period" is "October 17, 2013 through June 19, 2016." Ozard Decl. ¶ 3. The Funds "conducted an estimated audit of Pulco's delinquencies during this time period in accordance with the Funds' Collection Policy." *Id.* The "highest number of average hours reported per week during the estimated audit period occurred between [the] week ending September 6, 2015 and [the] week ending September 27, 2015." *Id.* ¶ 5. "Pulco's average remittances during this four-week period amounted to $9,662.45." *Id.* "Pursuant to the Collection Policy, the Funds extrapolated this average throughout the audit period to estimate Pulco's unpaid contributions during the audit period." *Id.* The Court has confirmed, within its limited review, that the Funds' estimated audit supports the Award.

The record therefore reflects much more than a "barely colorable justification for the outcome reached." *Landy Michaels Realty Corp.*, 954 F.2d at 797; *see also, e.g., Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund v. Dejil Sys., Inc.*, No. 12 Civ. 005 (JMF), 2012 WL 3744802, at *3 (S.D.N.Y. Aug. 29, 2012) ("Where, as here, there is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise

8

was contrary to law, a court must confirm the award upon the timely application of any party."). Accordingly, the Court confirms the Award and enters judgment for petitioners in the amount of $1,646,491.75.

### B. Interest

In general, "an arbitration award confirmed under the FAA bears interest from the date of the award until judgment confirming it." *In re Arbitration Between Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc.*, 420 F. Supp. 2d 223, 227 (S.D.N.Y. 2005). However, the statute does not preclude private parties from reaching a different agreement. *Cf. Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 101 (2d Cir. 2004) (parties may "contract out" of the default post-judgment interest rate established by 28 U.S.C. § 1961).

The parties have not contracted out of the default post-judgement interest rate established by 28 U.S.C. § 1961. The Court therefore grants petitioners' request for interest as to the portion of the Award that reflects unpaid contributions, namely, the principal amount of $1,278,189.07. As specified in the Agreement, the interest will be compounded daily at a rate of 5.5% from the date of the Award until the date the payment is made in full.

### C. Fees and Costs

Finally, petitioners seek $600 in attorneys' fees and $70 in costs incurred during this action. Petition ¶¶ 31–32. The Agreement provides that, if court proceedings are instituted to collect delinquent fringe benefit fund contributions, the employer must pay "reasonable attorneys' fees and costs of the action." Agreement at 54. Likewise, the Collection Policy states that "Attorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services . . . for all time spent by Collection Counsel in collection

efforts or in enforcing the [Funds'] rights to payroll reviews and/or audits." Collection Policy at 8.

The relevant statutes—ERISA, the LMRA, and the FAA—permit courts to award fees and costs, although they do not require that relief. *See, e.g., Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Alliance Workroom Corp*., No. 13 Civ. 5096 (KPF), 2013 WL 6498165, at *6 (S.D.N.Y. Dec. 11, 2013) ("Under ERISA, 'the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.'" (quoting 29 U.S.C. § 1132(g)(1))). Further, the Court may exercise its discretion to award fees and costs "when a party, without justification, fails to abide by an arbitration award." *Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining Educ. & Indus. Fund v. Premium Sys., Inc.*, No. 12 Civ. 1749(LAK) (JLC), 2012 WL 3578849, at *4 (S.D.N.Y. Aug. 20, 2012) (citing *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Emps.*, 118 F.3d 892, 898 (2d Cir. 1997)). "[C]ourts have routinely awarded attorneys fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court." *Abondolo v. H & M.S. Meat Corp.*, No. 07 Civ. 3870 (RJS), 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (collecting cases).

Here, Pulco agreed to resolve disputes through binding arbitration and then refused to participate in the proceedings. To date, Pulco has flatly ignored its duties, failing to abide by the Award or to appear before the Court. Accordingly, the award of attorneys' fees and costs is appropriate.

To support their request for fees and costs, petitioners provide an explanation of the underlying calculations, *see* Petition ¶¶ 27–29, and an invoice detailing the tasks performed and the hours worked by their counsel. *See* Petition Ex. G ("Invoice"). The Petition and Invoice show that one attorney worked 0.8 hours billed at $300 per hour, and that a law student supervised by the firm worked 3.6 hours billed at $100 per hour. Courts in this Circuit have recently found fees at similar rates reasonable. *See, e.g., Alliance Workroom Corp.*, 2013 WL 6498165, at *7; *Dejil Sys., Inc.*, 2012 WL 3744802, at *5 (collecting cases). The Court similarly so finds. Moreover, these rates were the result of negotiations between petitioner's counsel and the Funds, which, under the terms of the Agreement, "shall be assessed against" the employer. Collection Policy at 8; *see* Petition ¶ 30.

Petitioners also seek $70 in costs associated with the prosecution of this action, Petition ¶ 32, which the Court finds reasonable.

For these reasons, the request for attorneys' fees and costs incurred during this proceeding is granted in the amount of $670.

## CONCLUSION

For the reasons set forth herein, the Court confirms the arbitral award and orders interest, fees, and costs as set forth herein. The Clerk of Court is respectfully requested to terminate the motion pending at Dkt. 1 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: November 22, 2017
New York, New York

11